This is 410-0628, Gerecke-Scribner v. Savage. There is no appearance by the appellant who did not request an oral argument. Mr. Biswell, you are here on behalf of the appellee? Yes. Something you wish to share with us? May I please report? Counsel. A single issue brings us here today, and that issue is the exclusion of testimony of Nurse Kathy Brockhouse that Mr. Gerecke-Scribner's condition on the morning of April 14, 2002 was typical of an abruption. The plaintiff claims the trial court abused discretion by excluding this testimony and claims abuse of discretion in not allowing him a new trial. We submit to this tribunal, and I choose that word very carefully because an attorney submits something to the court for decision much the same way a nurse defers to a doctor to make a diagnosis. We submit to this court that the trial court was not unreasonable or arbitrary in the exclusion of the proffered opinion. There are several good reasons available to this court why that opinion was not allowed to come in and should continue not to come in. First of all, Nurse Brockhouse is not qualified by her licensure to offer an opinion on a medical diagnosis as a matter of law. In Illinois, there is a certain act known as the Nursing and Advanced Practice Nursing Act, found at 225 ILCS 65-1-1 in sequence. And that act draws a clear distinction between what a nurse can and cannot do. One of the things a nurse can do is make a nursing diagnosis. One of the things a nurse cannot explicitly do under the act is make a medical diagnosis. Now, the act does not define those terms for us. I suspect it would be very unwieldy and virtually impossible for the legislature to fashion any kind of useful definition of those terms. In any event, for Nurse Brockhouse to have been qualified to offer an opinion that she did in fact seek to testify to in the trial court properly excluded, it would have to be established that placental abruption was a proper nursing diagnosis. During the offer of proof, no such evidence was elicited by counsel. And I do not mean that as a slight to counsel in absentia. It's just simply not possible for a nurse or a foundation to be laid for a placental abruption to be considered a nursing diagnosis. And the reason is this. It's a medical diagnosis. All the experts in this case have testified. What is your definition of the difference between a nursing diagnosis and a medical diagnosis? Well, I don't carry one around personally because of probably for the same reason that the legislature didn't define those terms in the act. I think they would defy a specific diagnosis. Well, if I show up in the emergency room, I go down to Memorial Medical Center's emergency room, and I have chest pains and pain radiating down my left arm, and I tell this to the ER nurse, and she says, hmm, sounds like you're having a heart attack. Is that a nursing diagnosis or a medical diagnosis? Well, a heart attack would be a medical diagnosis. A nurse can investigate the signs and symptoms, but a nurse cannot diagnose. So why is this even an issue? It seems to me that this isn't a matter of statutory law. This is a matter of evidence law. The question of whether a particular person is an expert in an area permitted to testify is an expert. The medical malpractice action under Sullivan v. Edward Hospital is discussed by the Supreme Court of Illinois, and she isn't, and it doesn't make any difference what any statute says. I would agree. Why do you even talk about it? Just for the sake of thoroughness, in part, to eliminate that as a possibility of arguments that could be raised. I would agree that Sullivan, Dolan, a number of other cases, the recent Ian Sinow IA case, all stand for the longstanding proposition that it's a matter of evidentiary law. You've got to have a medical person to talk about the medical standard of care. You mean a medical doctor, not a medical person. A medical doctor. Because a nurse is a medical person. Yes, you're absolutely right, yes. And that gets us to the second basis for affirming the trial court, is the nurse just isn't qualified to testify to a medical opinion. And the case law is replete with examples of you have to have a medical physician testify to the standard of care for another medical physician, and a nurse just isn't qualified to do so. Dr. Savage was never asked, was he, what he believed the possible conditions of his patient might be, based upon the information he received from the nurse and later at the hospital? As I stand here, I cannot recall that directly off the top of my head. I believe there was testimony by Dr. Dubow, plaintiff's expert, and Dr. Diane Holman, and Dr. Larry Griffin are the defendant's experts, that it would be appropriate to consider placental abruption in the differential diagnosis. I'm receiving that particular report from that. Is there any reason to think that that wasn't something that Dr. Savage was aware of? Absolutely not. I'm inclined to say, although I can't cite a specific portion in the record, that either that was explicit or implicit in his testimony. But he was never asked, gee, doctor, did you ever think about this? The defendant or the plaintiff never asked him that question directly, did she? Not that I can recall presently. If Mr. Kessinger were here, the question I would have asked is, assuming that the nurse is not qualified under Sullivan to express an opinion, then what was the point and the primitive value of this testimony, but he's not here to ask, so we don't know. You know, I think that that gets to the point where another reason for affirming is it creates a misleading kind of position for the jury to hear from a nurse on the standard of care, and in fact on a medical diagnosis, that if a jury hears that, perhaps they are thinking, gosh, if the nurse saw it, why didn't the doctor just presume that it was a placental abruption, and they're not thinking of all the other possibilities, subchorionic, hematoma, placenta previa, ancillary low placenta, a number of other things, that could be on the doctor's differential. And I think in effect that would allow a nurse to testify to the standard of care applicable to a medical doctor. Here's another basis. It's simply misleading. I'm not trying to answer a question directed to the appellant who is not here, but at the same time I think that it poses a problem across the board, and for these reasons I think the affirmance of the trial court's decision are appropriate. One, she's not qualified. Two, as a matter of evidentiary law, Sullivan v. Edwards Hospital, Dolan v. Encino, all say it's not permissible, it's not admissible, and it would also be very misleading to the jury. Thank you very much. Thank you.